Filed 9/24/18

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AMY ARLENE TURNER et al., | C079613 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201400162567CUORGDS) |
| v. | |
| SETERUS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Reversed with directions.

United Law Center, Danny A. Barak and Stephen J. Foondos for Plaintiffs and Appellants.

The Ryan Firm, Timothy M. Ryan, Michael W. Stolzman, Jr. for Defendant and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of .parts I, IV, VI, VII and IX of the Discussion.

In this wrongful foreclosure case, plaintiffs Amy Arlene Turner and Joseph Zeleny sought damages from defendant Seterus, Inc. (Seterus) on the theory that Seterus had "frustrated [their] lawful attempt, pursuant to [Civil] Code [section] 2924c, to cure their default more than five days prior to the noticed foreclosure sale." The trial court sustained Seterus's demurrer to their third amended complaint without leave to amend.

On appeal, plaintiffs contend the trial court erred. We agree in part and reverse the judgment with instructions to the trial court to vacate its order sustaining Seterus's demurrer to the third amended complaint in its entirety without leave to amend and to instead enter a new order sustaining the demurrer without leave to amend as to the causes of action for intentional infliction of emotional distress and breach of contract, and overruling the demurrer as to the causes of action for intentional and negligent misrepresentation, negligence, wrongful foreclosure, and unlawful business practices.

FACTUAL AND PROCEDURAL BACKGROUND

With respect to Seterus,[1] the third amended complaint (as supplemented by material Seterus asked the trial court to take judicial notice of) alleges as follows:

Turner acquired title to the property that is the subject of this proceeding in 2001 as an unmarried woman. She married Zeleny in approximately 2003.

In 2006, Turner refinanced the loan on the property, taking out a new loan for $260,000. Turner was the sole borrower on the note, and only she is listed on the deed of trust. However, both plaintiffs contributed financially to the monthly payments on the loan.

---

[1] Plaintiffs also sued the original loan servicer, beneficiary, and trustee of the loan for various causes of action. The claims against those defendants are not implicated in this appeal.

2

After Turner lost her job in 2009, plaintiffs began having difficulty making the monthly loan payments. Plaintiffs obtained a loan modification in 2010; however, the loan servicer (at that time, Bank of America) repeatedly sent plaintiffs billing statements for greater amounts than provided for under the modification agreement, which plaintiffs could not afford. As a result, plaintiffs fell behind on the loan.

In October 2011, Seterus became the loan servicer. On February 9, 2012, a notice of default and election to sell under deed of trust was recorded against the property. The notice stated that the amount necessary to cure the default was $21,139.25. The notice further stated as follows: "you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property." The notice identified Seterus as the entity to contact to arrange for payment to stop the foreclosure and provided a mailing address and phone number "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason."

On October 3, 2012, a notice of trustee's sale was recorded against the property. The notice stated that the property would be sold at auction on October 23.

On or about October 13, 2012, Zeleny called Seterus and inquired as to the amount plaintiffs were in default. He spoke with an agent for Seterus, who would only identify herself as "Stacey." Before Stacey would speak with Zeleny, however, she required Turner to authorize Zeleny to speak on Turner's behalf. Turner got on the phone and told Stacey that Zeleny was authorized to speak for her.

Stacey informed Zeleny that plaintiffs were in default in the amount of $30,800. Plaintiffs had recently deposited $30,000 into their bank account, so Zeleny informed Stacey that he would like to pay off the entire amount of the default. Stacey told him that Seterus would not accept that amount to cure the default because plaintiffs were allowed

3

to cure the default only if they were in the modification process, and since plaintiffs had already been reviewed for a modification in the past five years, they could not receive a modification. Zeleny pleaded with Stacey and tried to explain that all he wanted to do was cure the default, but Stacey refused to accept payment.

With the trustee's sale looming, and left with no other option, Turner filed for chapter 7 bankruptcy. In the months following Turner's bankruptcy discharge, Seterus refused to work with plaintiffs on a foreclosure prevention solution. Ultimately, on April 29, 2013, Fannie Mae (which at that time held the beneficial interest under the deed of trust) purchased the property at the foreclosure sale.

On April 28, 2014, plaintiffs commenced this action against various defendants, including Seterus. In August 2014, plaintiffs filed a first amended complaint. Seterus demurred to that complaint. Before Seterus's demurrer was heard, however, plaintiffs filed a second amended complaint in response to the trial court's ruling on a demurrer to the first amended complaint filed by two other defendants (Bank of America and Fannie Mae). As a result, plaintiffs did not oppose Seterus's demurrer to the first amended complaint, and the trial court sustained that demurrer with leave to amend.

Following the trial court's ruling, plaintiffs filed a third amended complaint that alleged 10 causes of action. Eight of those causes of action were directed at Seterus: (1) intentional misrepresentation (second cause of action); (2) negligent misrepresentation (third cause of action); (3) negligence (fourth cause of action); (4) negligence per se (fifth cause of action); (5) intentional infliction of emotional distress (sixth cause of action); (6) breach of contract (eighth cause of action); (7) wrongful foreclosure (ninth cause of action); and (8) unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200 et seq. (tenth cause of action). Plaintiffs also attached the following exhibits to their third amended complaint: (1) written modification agreement; (2) corporate assignment of deed of trust; and (3) notice of default and declaration of contract and due diligence.

4

Seterus demurred to the third amended complaint in January 2015. Plaintiffs opposed the demurrer. In March 2015, the trial court sustained Seterus's demurrer without leave to amend.

As to Zeleny, the court concluded that he lacked standing to pursue any of the causes of action in the third amended complaint because Turner was the only person listed on the note and deed of trust on the property. The court then concluded that neither plaintiff could pursue any of the causes of action in the complaint because the complaint did not allege that either or both of them unconditionally tendered the full amount due and owing on the loan. The court further concluded that it was "apparent . . . that [Turner did not have] the ability to [tender the full amount owed], as she filed for bankruptcy."

With respect to the individual causes of action alleged against Seterus (which excluded only the first and seventh causes of action), the court offered the following reasoning:

(1) The court sustained Seterus's demurrer to the second cause of action (for intentional misrepresentation) and the third cause of action (for negligent misrepresentation) because plaintiffs failed to allege causation of their damages because they failed to allege tender.

(2) The court sustained Seterus's demurrer to the fourth and fifth causes of action (for negligence and negligence per se) because Seterus, as servicer of the loan, did not owe any duty beyond that of a conventional lender of money, and "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[2]

---

[2]     The court further sustained Seterus's demurrer to the fifth cause of action (for negligence per se) because plaintiffs failed to allege tender of the entire indebtedness.

5

(3) The court sustained Seterus's demurrer to the sixth cause of action (for intentional infliction of emotional distress) because "[t]he act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports [such a] claim" and because Turner did not allege facts demonstrating that she suffered severe emotional distress.

(4) The court sustained Seterus's demurrer to the eighth cause of action (for breach of contract) because plaintiffs did not allege "that they performed by tendering the full accelerated amount due."

(5) The court sustained Seterus's demurrer to the ninth cause of action (for wrongful foreclosure) because plaintiffs failed to allege tender.

(6) The court sustained Seterus's demurrer to the tenth cause of action (for unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200 et seq.) without further explanation.

The court subsequently entered judgment in favor of Seterus on April 24, 2015. Plaintiffs timely appealed.

## DISCUSSION

### I

### *Standard Of Review*

" 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' " (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999.) We may

6

affirm a trial court judgment on any basis presented by the record whether relied upon by the trial court. (*Ibid.*)

## II

### *Zeleny's Standing*

The trial court concluded that Zeleny lacked standing to pursue any of the causes of action in the third amended complaint because Turner was the only person listed on the note and deed of trust on the property. On appeal, plaintiffs contend the court erred in this ruling because: (1) the property, although titled in Turner's name only, was a community asset because both plaintiffs contributed to the monthly payments on the loan; and (2) plaintiffs intended the note and deed of trust to be in both of their names and asked their broker to make that happen but did not realize until years later that the broker did not make the change as promised. At most, plaintiffs contend, Zeleny might not have standing to sue for breach of contract (because he was not a party to the loan, even though they intended him to be), but the fact that the property was a community asset gives him standing to pursue all of the tort causes of action in the third amended complaint.

In response, Seterus argues that the property was not a community asset, but was Turner's separate property because she acquired it prior to the parties' marriage. In their reply brief, plaintiffs do not dispute that Turner acquired the property before her marriage to Zeleny; instead, they contend the community had an interest in the property anyway because community funds were used during the marriage to make payments on the loan. And because the community had an interest in the property, Zeleny had an interest in the property sufficient to give him standing in this action (with the possible exception of the breach of contract cause of action).

We agree with plaintiffs that the allegations of the third amended complaint are sufficient to establish that the community had an interest in the property. The complaint alleges that "both Plaintiffs contributed financially to the monthly payments on the

7

Subject Loan."  Construed liberally, we take this allegation to mean that both parties contributed their community property earnings during the marriage to payments on the loan principal, which, under California community property law, gave the community an interest in what was otherwise Turner's separate property.  (See, e.g., *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421-1422 ["[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property"].)

Because, under the allegations of the third amended complaint, the community had an interest in the property, at the very least Zeleny, as a member of the community, had standing to pursue the tort causes of action asserted in the complaint to the extent those causes of action alleged that Seterus's conduct resulted in the loss of the property -- and, as a result, the community's interest therein.  " 'Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.' (Code Civ. Proc., § 367.)  The real party in interest has ' "an actual and substantial interest in the subject matter of the action," and stands to be "benefited or injured" by a judgment in the action.' [Citation.]  'Plaintiffs have standing to sue if they or someone they represent have either suffered or are threatened with an injury of sufficient magnitude to reasonably assure the relevant facts and issues will be adequately presented.' " (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 54-55.)  As a member of the community, which had an interest in the property, Zeleny has an actual and substantial interest in recovering tort damages for the loss of that property and stands to be benefitted by a judgment in this action.  Accordingly, the fact that Zeleny was not a party to the note and deed of trust on the property does not deprive him of standing in this action, and the trial court erred in concluding otherwise.

8

# III

## *The Tender Rule And Wrongful Foreclosure*

Wrongful foreclosure is a common law tort claim. "The elements of a wrongful foreclosure cause of action are: ' "(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." ' " (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561-562; *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 782.)

The third element is commonly known as the tender rule. Where tendering is required and not excused, a plaintiff seeking to set aside an irregular sale must allege tender of the full amount of the loan to maintain *any* cause of action that either is based on the wrongful foreclosure allegations or seeks redress from that foreclosure. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 579.)

Courts have applied equitable exceptions to the tender rule, such as: "(1) where the borrower's action attacks the validity of the underlying debt, tender is not required since it would constitute affirmation of the debt; [citations] (2) when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary, the tender and the counter-claim offset each other and if the offset is greater than or equal to the amount due, tender is not required; [citations] (3) a tender may not be required if it would be 'inequitable' to impose such a condition on the party challenging the sale; [citations] (4) tender is not required where the trustor's attack is based not on principles of equity but on the basis that the trustee's deed is void on its face (such as where the original trustee had been substituted out before the sale occurred)[;] [citations] [(5)] when

9

the loan was made in violation of substantive law, or in breach of the loan agreement or an agreement to modify the loan[;] [citations] [and (6)] when the borrower is not in default and there is no basis for the foreclosure [citations]."  (5 Miller & Starr, Cal. Real Estate (4th ed. 2017) § 13:256, pp. 13-1101-1102.)

The trial court concluded that each cause of action in the third amended complaint failed because plaintiffs did not allege actual and unconditional tender of the entire amount of the indebtedness under the loan.  Citing to *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117, the court stated, "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  The court found "[t]his failure to do equity, despite asking for equitable relief related to the foreclosure, bars all of the claims" in the third amended complaint.  Thus, it appears the trial court found the plaintiffs were not excused from tendering the entire loan amount to maintain their wrongful foreclosure cause of action and, because the other causes of action arose from the same allegations and sought redress from that foreclosure, those "implicitly integrated" causes of action failed as well. (*Karlsen*, at p. 121.)

Plaintiffs contend the trial court committed three errors in applying the tender rule to their causes of action.  "First, the trial court conflated an offer to tender with a requirement of an actual physical payment."  "Second, the trial court improperly concluded that the fact that . . . Turner filed for bankruptcy **must** have meant that [plaintiffs] could not afford to cure any amount due, the default sum or the entire sum." Third, "the trial court erroneously assumed that [Civil Code section] 2924c requires a **full** tender **of the entire indebtedness** under the loan."  We agree the trial court erred.

We address the third claim of error first.  Seterus argues the trial court's ruling is consistent with a long line of cases requiring the tender to be the *full* amount due under the *loan* (or note) for which the property was security, as stated in *Arnolds Management Corp. v. Eischen*, *supra*, 158 Cal.App.3d 575; *Karlsen v. American Sav. & Loan Assn.*,

10

*supra*, 15 Cal.App.3d 112; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89; *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020; and *Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154. Those cases, however, arose in circumstances where the borrowers sought to *redeem* the properties, not where they were trying to *reinstate* their loans as provided under Civil Code section 2924c. Context is important.

The Legislature has provided "a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. [(Civ. Code, § 2924 et seq.)] The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from a wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) This statutory framework provides specific procedures in the nonjudicial foreclosure sale process.

For example, "[d]uring the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property. First, the trustor is entitled to a period of reinstatement to make the back payments and reinstate the terms of the loan." (*Moeller v. Lien*, *supra*, 25 Cal.App.4th at p. 830.) Specifically, the debtor/trustor may reinstate the loan by tendering "the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses [as provided], other than the portion of principal as would not then be due had no default occurred." (Civ. Code, § 2924c, subd. (a)(1).) Such tender "cure[s] the

11

default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred." (*Ibid.*) "Th[e] period of reinstatement continues until five business days prior to the date of the sale, including any postponement." (*Moeller*, at p. 830.) "In addition to the right of reinstatement, the trustor also possesses an equity of redemption, which permits the trustor to pay all sums due [on the note] prior to the sale of the property at foreclosure and thus avoid the sale." (*Ibid.*)

The requirements to exercise each of these rights -- the right to reinstatement and the right to redemption -- are proportional to the value of the relief secured, and are not interchangeable. (See 5 Miller & Starr, Cal. Real Estate, *supra*, at § 13:230, pp. 13-939-13-940 ["A tender of the entire amount owing to the beneficiary . . . is called a redemption . . . however, this does not 'reinstate' the loan but rather pays the debt in full and requires a release of the deed of trust or mortgage." In contrast, a "reinstatement," on "tender of the amount required for a cure of the default," reinstates the obligation "according to the original terms as if no default had occurred."], fn. omitted.)

The tender rule arose in the context of redemption cases where the plaintiffs sought to set aside the trustee's sale for irregularities in the foreclosure sale notice or procedure. (See, e.g., *Arnolds Management Corp. v. Eischen*, *supra*, 158 Cal.App.3d 575 [defect in notice of sale]; *Karlsen v. American Sav. & Loan Assn.*, *supra*, 15 Cal.App.3d 112 [trustee sold property to corporation in which trustee was financially interested].) " 'The rationale behind the [tender] rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at p. 112.) "Allowing [borrowers] to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.) Thus, the tender rule "is

12

based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878; *Arnolds Management Corp.*, at pp. 578-579 [court of equity will not order performance of a "useless act"].)

The plaintiffs' wrongful foreclosure cause of action does not arise from the right to redeem the property based on an irregularity in the notice or procedure of the sale. Rather, plaintiffs' cause of action arises from their right to reinstate Turner's loan and their allegation that, *but for* Seterus's failure to accept Zeleny's tender of the $30,800, Turner would have cured the default, which would have entitled Turner to reinstate the loan and extinguished the basis for the trustee's sale. The basis for plaintiffs' wrongful foreclosure cause of action is thus wholly different from the basis for redemption.

For similar reasons, the cases cited by the trial court and Seterus to support the requirement of tender of the full amount of the loan do not apply to plaintiffs here. All these cases involve different circumstances and do not address the statutory analysis that governs this issue. In *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, the homeowner alleged the lender mailed her a loan modification agreement under the Home Affordable Modification Program, and she signed, returned, and performed under that agreement. The lender, however, never mailed the homeowner a signed copy of the loan modification agreement. The homeowner learned the property had been sold at auction even though she never received a notice of default or notice of trustee sale. (*Id.* at pp. 1055-1056.) The homeowner was forced from her home and filed an action for breach of contract and wrongful foreclosure. (*Id.* at p. 1056.) The trial court sustained the defendants' demurrer without leave to amend. (*Ibid.*) The court of appeal reversed. (*Id.* at p. 1055.)

Pertinent to our discussion, the court explained the homeowner was not required to allege tender because she properly alleged a cause of action for breach of contract of the

13

modification agreement. (*Chavez v. Indymac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1062.) She alleged the existence of an enforceable agreement and that defendants breached the agreement by refusing payment. Thus, she "sufficiently alleged an exception to the tender rule that the foreclosure sale was void because Defendants lacked a contractual basis to exercise the power of sale as [her] original loan had been modified under the [agreement] and [she] fully performed under the [agreement] until Defendants breached the agreement by refusing payment." (*Id.* at p. 1063.) Although the homeowner also alleged improper notice of the trustee's sale, which would otherwise be subject to the tender requirement, the allegation did "not invalidate the remainder of th[e] properly pled cause of action." (*Ibid.*)

The court in *Chavez* cited to *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706 in reaching its decision. In *Bank of America*, the beneficiary accepted the homeowners' tendered default payment on the loan but failed to notify the trustee that the loan had been reinstated, and the foreclosure sale went forward. (*Bank of America*, at p. 709.) The beneficiary bank sued the party that successfully bid on the property at the foreclosure sale, seeking to cancel the sale. The *Bank of America* court found "the homeowners and the beneficiary bank had entered into an agreement to cure the default. It followed that the beneficiary bank had no right to sell after that agreement and the foreclosure sale was invalid." (*Barroso v. Ocwen Loan Servicing LLC* (2012) 208 Cal.App.4th 1001, 1017.)

The court in *Barroso v. Ocwen Loan Servicing LLC*, *supra*, 208 Cal.App.4th 1001 also applied the principle in *Bank of America*. In *Barroso*, the homeowner alleged she had an enforceable loan modification agreement with the beneficiary and that she made all subsequent payments when they were due. (*Barroso*, at p. 1017.) The loan servicer accepted the homeowners' payments under the modification agreement, but nonetheless proceeded with the foreclosure sale. (*Id.* at pp. 1004-1006.) The homeowner sued for, among other things, wrongful foreclosure, alleging she was not in default under the

14

modification agreement. (*Id*. at pp. 1006-1007.) The defendants demurred to the complaint, arguing the homeowner failed to allege tender of the amounts due under the mortgage. (*Id*. at p. 1007.)

The court found that, "[b]ased on [her] allegations, [the homeowner] ha[d] alleged a basis for wrongful foreclosure under the principles applied in *Bank of America v. La Jolla Group II*, *supra*, 129 Cal.App.4th at page 712. It was not necessary for [the homeowner] to tender any amount to [the loan servicer] to forestall the foreclosure sale because there was no default under the terms of the [agreement]." (*Barroso v. Ocwen Loan Servicing LLC*, *supra*, 208 Cal.App.4th at p. 1017.) In other words, because the homeowner alleged an enforceable agreement and that she performed in accordance with her contractual obligations, the loan servicer had no contractual right to sell the property and, therefore, the homeowner did not have to tender the full loan amount to maintain her wrongful foreclosure cause of action.

Here, plaintiffs allege that Seterus, acting through its representative, Stacey, wrongfully refused Zeleny's tender of the amount necessary to cure the default on Turner's loan. Under Civil Code section 2924c, Turner had a statutory right, up to five days before the noticed foreclosure sale, to stop the sale by tendering the amount due as specified in subdivision (a)(1). A tender compliant with Civil Code section 2924c, subdivision (a)(1) "cure[s] the default" such that all default proceedings "*shall* be dismissed or discontinued and the obligation and deed of trust or mortgage *shall* be reinstated and *shall* be and remain in force and effect, the same as if the acceleration had not occurred." (Civ. Code, § 2924c, subd. (a)(1), italics added.) Because the Legislature used the words "shall" and "may" in close proximity to one another in the statute, we may infer the Legislature intended the use of "shall" to be mandatory. (*In re Richard E.* (1978) 21 Cal.3d 349, 353-354.)

Civil Code section 2924c thus limits the beneficiary's contractual power of sale by giving the trustor a right to cure a default and reinstate the loan within the stated time,

15

even if the beneficiary does not voluntarily agree. (*Bank of America v. La Jolla Group II*, *supra*, 129 Cal.App.4th at p. 712.) " 'The law does not require plaintiff to tender the purchase price to a trustee who has no right to sell the property at all.' " (*Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 951.) To adequately plead a cause of action for wrongful foreclosure, all plaintiffs had to allege was that they met their statutory obligation by timely tendering the amount required by Civil Code section 2924c to stop the foreclosure sale, but Seterus refused that tender and thus allowed the foreclosure sale to go forward when Seterus should have accepted their tender and canceled the sale. Plaintiffs did so. If Seterus had accepted the tender, which Stacey stated was sufficient to cure the default, a rescission of the foreclosure sale and reinstatement of the loan was *mandatory*, and the subsequent sale was without legal basis and void, similar to the unlawful sales in *Chavez* and *Barroso*.

Under the circumstances alleged, tender of the full amount of the loan is unnecessary. It would be nonsensical to require plaintiffs to tender the full amount of the loan to maintain a wrongful foreclosure cause of action based on Seterus's refusal to accept the timely tender of the amount required under Civil Code section 2924c. (*Munger v. Moore* (1970) 11 Cal.App.3d 1, 7-8 [failure to accept timely tender of amount due to cure default may constitute wrongful foreclosure allowing a plaintiff to bring an action for damages for the illegal sale resulting from the failure to accept the timely tender].) Such a requirement would thwart the statutory intent of Civil Code section 2924c by failing to "protect the debtor/trustor from a wrongful loss of the property." (*Moeller v. Lien*, *supra*, 25 Cal.App.4th at p. 830.) Accordingly, we find the tender rule does not bar any of plaintiffs' causes of action.

This conclusion leaves a few loose ends to wrap up regarding the wrongful foreclosure cause of action. First, Seterus suggests that even if plaintiffs did not have to tender the full amount of the indebtedness, they had to do more than *offer* to pay the amount required to cure the default. In Seterus's view, Civil Code section 2924c

16

obligated plaintiffs "to *actually* submit a payment to [Seterus], which they concede they did not."

We disagree that actual submission of a payment was necessary here for plaintiffs to state a cause of action for wrongful foreclosure. As the trial court itself noted, "[a] tender is an *offer* of performance . . . ." (Italics added.) (See Civ. Code, § 1485 ["[a]n obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation"].) Subdivision (a)(1) of Civil Code section 2924c provides in pertinent part that "[w]henever all or a portion of the principal sum of any obligation secured by deed of trust . . . has . . . been declared due by reason of default in payment of interest or of any installment of principal . . . , the trustor . . . may pay to the beneficiary . . . the entire amount due, at the time payment is tendered . . . other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust . . . shall be reinstated and shall be and remain in force and effect . . . ." Here, for purposes of Civil Code section 2924c, Zeleny effectively tendered payment of the amount then due when he told Stacey that he would like to pay off the entire amount of the default. Actual submission of a payment was not required.

This conclusion is bolstered by the legal maxim that "[n]o one can take advantage of his own wrong." (Civ. Code, § 3517.) On the facts alleged here, the only reason plaintiffs did not make an actual payment of the entire amount of the default was because Seterus's representative, Stacey, told Zeleny that Seterus would not accept that amount to cure the default because plaintiffs were not in the loan modification process. Seterus cannot defeat the wrongful foreclosure cause of action by relying on its representative's wrongful refusal of the offer to pay the amount required under Civil Code section 2924c to stop the foreclosure sale by arguing that plaintiffs never made an actual payment.

17

Consequently, Seterus's argument that actual submission of a payment was required here is without merit.

Seterus next argues that even if an offer of payment was sufficient, plaintiffs' tender was ineffective because they judicially admitted that they did not have the ability to cure the default, and they are judicially estopped from arguing otherwise. (See Civ. Code, § 1495 ["[a]n offer of performance is of no effect if the person making it is not able and willing to perform according to the offer"].) These arguments are also without merit.

As the basis for its judicial admission argument, Seterus relies on the fact that in her bankruptcy petition, filed fewer than 10 days after Zeleny offered to cure the default in the sum of $30,800, Turner reported having only $23,245 in the bank.[3] But even if the schedule in Turner's bankruptcy petition is treated as an admission that there was less than $24,000 in plaintiffs' bank accounts on October 22, 2012, that admission does *not* establish that plaintiffs did not have $30,800 in their bank accounts approximately nine days *earlier*, on or about October 13, 2012, when Zeleny talked to Stacey and offered to pay the entire amount in default. Accordingly, Seterus's judicial admission argument has no merit.

Seterus's judicial estoppel argument, which is also based on Turner's bankruptcy schedule, fares no better.[4] Seterus admits that for judicial estoppel to apply, the party to

_____

[3]     Seterus asks us to take judicial notice of the Voluntary Petition filed by Turner in the United States Bankruptcy Court for the Eastern District of California on October 22, 2012, and the Discharge of Debtor issued by that court on February 5, 2013. We deny the request for judicial notice because the documents are irrelevant to this appeal, as we explain.

[4]     Turner asks us to take judicial notice of the original complaint filed in this action, Seterus's demurrer to that complaint, and her Ex Parte Motion to Reopen Case filed in the United States Bankruptcy Court for the Eastern District of California on April 22, 2014. We deny the request for judicial notice because the documents are irrelevant to

18

be estopped must have taken two positions that are "totally inconsistent." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) That element is not satisfied here because Turner's assertion that plaintiffs had less than $24,000 in their bank accounts on October 22, 2012, is not necessarily inconsistent with Zeleny's assertion that plaintiffs had at least $30,800 in the bank approximately nine days earlier. Consequently, Seterus's judicial estoppel argument also has no merit.[5]

Seterus next argues that, even if an offer of payment was sufficient and even if plaintiffs had the ability to cure the default, Zeleny was not within the class of persons entitled to reinstate the loan, and therefore *his* tender of the payment was of no legal significance. This argument, too, is without merit. The third amended complaint specifically alleges that before Stacey would speak with Zeleny, she required Turner to authorize Zeleny to speak on Turner's behalf, and Turner took the phone and told Stacey that Zeleny was authorized to speak for her. When Zeleny informed Stacey that he would like to pay off the entire amount of the default, he was therefore speaking for Turner -- the trustor under the deed of trust -- who even Seterus admits had the right to reinstate the loan under Civil Code section 2924c. Accordingly, the fact that the offer of payment was made by Zeleny does *not* defeat plaintiffs' cause of action for wrongful foreclosure.

---

this appeal dealing with the demurrer to plaintiffs' third amended complaint. Plaintiffs sought judicial notice of these documents in response to Seterus's judicial estoppel argument; however, as we explain, Seterus's argument has no merit.

[5] To the extent Seterus argues that plaintiffs are judicially estopped from pursuing the causes of action asserted in the third amended complaint because Turner did not originally list those causes of action as assets of her bankruptcy estate -- even though she later reopened her bankruptcy proceeding, amended her schedules, and then obtained an order from the bankruptcy trustee abandoning those causes of action as assets of the bankruptcy estate -- we decline to address that argument as it is limited to a footnote, not supported by adequate citations to the record on appeal, and not adequately developed. (See California Rules of Court, rule 8.204(a)(1)(B), (C).)

Having considered all of the arguments offered by Seterus on the point, we conclude that plaintiffs have stated a viable cause of action for wrongful foreclosure and the trial court erred in sustaining Seterus's demurrer to that cause of action. We now turn to the remaining causes of action in the third amended complaint that apply to Seterus.

IV

*Intentional And Negligent Misrepresentation*

The trial court sustained Seterus's demurrer to the second cause of action (for intentional misrepresentation) and the third cause of action (for negligent misrepresentation) based on the conclusion that "in the absence of allegations of actual tender, plaintiffs have failed to allege causation of their damages." In addressing the wrongful foreclosure cause of action, we have already explained why plaintiffs' failure to tender the full amount of Turner's loan does not preclude them from maintaining these causes of action. Accordingly, the sustaining of the demurrer as to the misrepresentation causes of action cannot be upheld based on the reason the trial court gave for its ruling. Seterus argues, however, that there are several other reasons why the third amended complaint does not state viable causes of action for intentional or negligent misrepresentation.

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. [Citations.] The essential elements of a count for negligent misrepresentation are the same except that it does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 230-231.) "Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged. [Citation.] The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect." (*Cadlo v. Owens-Illinois, Inc.* (2004) 125

20

Cal.App.4th 513, 519.)  The allegations must be sufficiently specific "to allow defendant to understand fully the nature of the charge made."  (*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109.)

Seterus argues the elements have not been met because plaintiffs did not properly allege an actionable misrepresentation, that Stacey's statement was false, that Stacey knew the statement was false or that she had no reasonable basis for believing the statement to be true, or how plaintiffs relied on the misrepresentation.  These arguments are unavailing.

To set the stage for the analysis, we note that, reading the complaint as a whole (*Blumhorst v. Jewish Family Services of Los Angeles*, *supra*, 126 Cal.App.4th at p. 999), plaintiffs allege Stacey's representation -- that Seterus would not accept $30,800 to cure the default on the loan because plaintiffs could cure the default only if they were in the modification process, and since plaintiffs had already been reviewed for a modification in the past five years, they could not receive a modification -- was a knowing or reckless misrepresentation, or one made without a reasonable basis for believing it was true, whether it was based on Seterus's alleged policy or the law, entitling them to relief.

Seterus first argues Stacey's statement is not actionable because it is a statement of "opinion or law," not fact, and, even if it was a representation of fact, it was not material.  Plaintiffs contend that what Stacey misrepresented to Zeleny was her "understanding of [Seterus's] policy, not her understanding of the law.  The law simply demonstrates why this representation was false."  Plaintiffs further argue Stacey's representation that Seterus would not accept plaintiffs' payment was material because, but for her representation, plaintiffs would have remitted payment and the loan would have been reinstated.  We focus on the actual allegations in the third amended complaint.

Addressing the first portion of Seterus's argument, we note it is true that, "[g]enerally, an actionable misrepresentation must be made as to past or existing facts" (*Borba v. Thomas* (1977) 70 Cal.App.3d 144, 152) and, "absent special circumstances,

21

misrepresentations of law do not amount to actionable fraud" (*Bledsoe v. Watson* (1973) 30 Cal.App.3d 105, 110).  The problem with Seterus's argument is that it mischaracterizes the nature of the representation.

Seterus argues "the representation at issue . . . solely concerns whether [Seterus] accurately represented its understanding of its obligations under [Civil Code] section 2924c."  In actuality, however, plaintiffs expressly identify the misrepresentation as Stacey's statement to Zeleny that Seterus would not accept $30,800 to cure the default on the loan because plaintiffs could cure the default only if they were in the modification process, and since plaintiffs had already been reviewed for a modification in the past five years, they could not receive a modification.  That alleged statement is not a statement of opinion or law, but a statement of fact, i.e., Seterus will not accept your tender because you are not in the modification process, nor can you be.  This statement does not express an opinion on whether Seterus was legally obligated to accept the tender or whether plaintiffs had the legal ability or right to reinstate the loan, as Seterus contends. Plaintiffs' allegations relating to Civil Code section 2924c go to the falsity of the statement, as we explain below.

As to Seterus's second portion of the argument regarding the alleged immateriality of the statement, it argues plaintiffs "failed to allege facts or provide argument as to why the specific reason(s) given by [Seterus] as to why it allegedly would not accept the alleged reinstatement was important or affected the transaction at issue."  It further states, "[p]lainly, the only relevant consideration for [plaintiffs] was that the alleged reinstatement was not being accepted, regardless of the reasons for same."  Plaintiffs respond they adequately alleged that, "but for 'Stacey's' representation that [Seterus] could not accept [plaintiffs'] offer to reinstate the loan based on a bogus and likely non-existent modification policy, [plaintiffs] would have remitted payment and the loan would have been brought current."  We again focus on the allegations in the third amended complaint.  Plaintiffs alleged that, but for Stacey's statement, they "would have

transferred the required $30,800.00 to cure their default." This is sufficient to establish the materiality of the alleged misrepresentation at the pleading stage in light of the statutory duties and obligations set forth in Civil Code section 2924c.

Seterus next contends plaintiffs failed to allege facts demonstrating Stacey's statement was false, "i.e., that [Stacey's] statements were not in accord with [Seterus's] own policies." It argues plaintiffs merely alleged that the statement was false because it was not in accord with Civil Code section 2924c, which is insufficient. These allegations are sufficient to support plaintiffs' allegation that Stacey's statement was false because plaintiffs had a legal right to cure the default despite not being in the loan modification process, contrary to what Stacey said. Further, plaintiffs alleged Seterus cited "***non-existent rules*** regarding the ability to cure a default only when one is in modification review" when it refused plaintiffs' tender because its "main aim" was to foreclose on the property. Plaintiffs reiterate, "Plaintiffs are informed and believe and thereon allege that there is no such rule." Thus, plaintiffs alleged that Stacey's statement was false to the extent she was purporting to base her statement on an internal policy because no such policy existed. These allegations are sufficient to allow Seterus to fully understand the nature of the charge being made against it. (*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra*, 57 Cal.App.3d at p. 109.)

Seterus also contends that plaintiffs failed to adequately allege that Stacey knew or should have known of the falsity, or that she had no reasonable basis for believing her statement. Plaintiffs' allegations that no such policy existed and that Civil Code section 2924c expressly provided plaintiffs with the ability to cure the default regardless of whether they were participating in a loan modification review are sufficient to satisfy this element.

Seterus's final argument is that plaintiffs "failed to plead specific facts indicating how they relied on [Seterus's] statement as to why it was purportedly rejecting . . . Zeleny's alleged offer to reinstate the loan." It is unclear why Seterus believes plaintiffs

were required to specifically allege how it relied on the *reason* why Seterus rejected the tender as opposed to reliance on the *very fact* that Seterus rejected the tender, and it cites no authority for this proposition. In the third amended complaint, plaintiffs alleged that, but for Stacey's representation, they "would have transferred the required $30,800.00 to cure their default." This is sufficient.

For the foregoing reasons, we conclude plaintiffs stated viable causes of action for intentional and negligent misrepresentation and that the trial court erred in sustaining Seterus's demurrer to those causes of action.

V

*Negligence And Negligence Per Se*

The trial court sustained Seterus's demurrer to the fourth and fifth causes of action (for negligence and negligence per se) based on the conclusion that Seterus, as servicer of the loan, did not owe any duty beyond that of a conventional lender of money, and "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

Before we proceed further, we note that "the doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1353, fn. 2.) Accordingly, we treat plaintiffs' fourth and fifth causes of action as alleging a single cause of action for negligence.

"Whether a duty of care exists is a question of law to be determined on a case-by-case basis." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.) The question here is whether Seterus owed a duty of care to plaintiffs that would support a cause of action for negligence based on Seterus's alleged rejection of Zeleny's timely attempt to pay the amount necessary to cure the default. The alleged duty supporting the

negligence claims is the statutory duty under Civil Code section 2924c to accept plaintiffs' full tender of the amount in default.

Seterus contends no duty can be found, relying on the same general rule offered by the trial court -- that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.)  Plaintiffs respond the question of duty in a specific case must be determined by applying the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647, as we did in *Nymark*.  (*Nymark*, at pp. 1098-1100.)  They further argue that, although the courts are split over whether a lender owes a duty of care in negotiating or processing a loan modification (see *Lueras v. BAC Home Loans Servicing*, *supra*, 221 Cal.App.4th at p. 67; *Alvarez v. BAC Home Loans Servicing, LP*, *supra*, 228 Cal.App.4th at p. 951), this case does not involve a loan modification.  We agree that we need not address the split relating to loan modification cases, but we also need not apply the *Biakanja* factors because plaintiffs' negligence claims arise from Seterus's statutory duty, not from an asserted common law duty.

"Statutes may be borrowed in the negligence context for one of two purposes: (1) to establish a duty of care, or (2) to establish a standard of care." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927-928, fn. 8; see also Evid. Code, § 669.)  We note that our Supreme Court, in *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, explained that "the Legislature intended to cover the entire subject area of nonjudicial foreclosures by statute" to define the duties among and between the pertinent parties. (*Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 295.)  Accordingly, to the extent a negligence cause of action arises from a statutory duty under the nonjudicial foreclosure statutes (Civ. Code, § 2924 et seq.), we believe the duty is sufficient to support a negligence cause of action.

Here, plaintiffs allege they timely tendered an amount sufficient to cure the default to Seterus, as provided under Civil Code section 2924c.  Civil Code section 2924c, subdivision (a)(1) provides that upon such timely and appropriate tender "all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust . . . shall be reinstated and shall be and remain in force and effect . . . ."  As explained above, the use of the word "shall" denotes a mandatory obligation.  Accordingly, plaintiffs alleged sufficient facts to establish a statutory duty of care to support their negligence claims.

VI

*Intentional Infliction Of Emotional Distress*

The trial court sustained Seterus's demurrer to the sixth cause of action (for intentional infliction of emotional distress) because "[t]he act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports [such a] claim" and because Turner did not allege facts demonstrating that she suffered severe emotional distress.  On appeal, plaintiffs contend the trial court erred on both of these points.  We agree with Seterus that plaintiffs did not allege facts sufficient to support an intentional infliction of emotional distress cause of action.

"The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress."  (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 204.)  "[T]he alleged conduct . . . ' "must be so extreme as to exceed all bounds . . . usually tolerated in a civilized community." ' "  (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494.)  Further, the requisite severe emotional distress must be such that "no reasonable [person] in civilized society should be expected to endure it" and the

26

defendant's conduct must be " ' "intended to inflict injury or engaged in with the realization that injury will result." ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001, 1004.)

We look to case law to define conduct which is sufficiently outrageous to satisfy that particular element of the tort of intentional infliction of emotional distress. (See, e.g., *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 908-909 [bank's conduct was sufficiently outrageous where it made misrepresentations to induce plaintiffs to assign all past, present and future accounts receivable to the bank, then refused further loans and forced plaintiffs to execute excessive guarantees and security agreements, while bank employees publicly ridiculed plaintiffs, including the use of profanities]; compare *Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009 [conduct not sufficiently outrageous where foreclosing lenders breached oral agreement to foreclose on a vacant property first where there were no allegations that lenders "threatened, insulted, abused or humiliated" the plaintiffs].)

Plaintiffs rely on one case -- *Ragland* -- to support their claim, arguing that, "[m]uch like in *Ragland*, in which Downey Savings proceeded with foreclosure despite violating Cal. Civ. Code §2924(d), [Seterus] in the instant action proceeded with foreclosure despite violating Cal. Civ. Code §2924c. Under *Ragland*, such conduct would be sufficient." The problem with plaintiffs' argument is that *any* statutory violation would give rise to a claim for intentional infliction of emotional distress, which is a proposal we cannot endorse. The plaintiffs would have to allege that the violation was done in an extreme or outrageous manner as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in civilized community. (*Cochran v. Cochran*, *supra*, 65 Cal.App.4th at pp. 494-495.)

Here, plaintiffs alleged that in response to Zeleny's offer to cure the default on Turner's loan, Seterus "refused to accept the offer, citing ***non-existent rules*** regarding the ability to cure a default only when one is in modification review." In addition, plaintiffs

alleged that Seterus's refusal of the offer to cure the default "was pre-textual, as SETERUS had already decided that it wished to benefit from a foreclosure of the Subject Property regardless of Plaintiffs['] legal right to cure their default and regardless of the emotional distress Plaintiffs would suffer from losing the home in which they raised their children." These allegations are distinguishable from those in *Ragland* and do not give rise to the outrageous and extreme conduct necessary to support an intentional infliction of emotional distress claim.

The factual distinctions between the allegations in the two cases do make a difference. Accordingly, we conclude the trial court appropriately sustained the demurrer to the cause of action for intentional infliction of emotional distress.

VII

*Breach Of Contract*

The trial court sustained Seterus's demurrer to the eighth cause of action (for breach of contract) because plaintiffs did not allege "that they performed by tendering the full accelerated amount due." On appeal, not even Seterus attempts to defend the trial court's reasoning. Instead, Seterus argues that: (1) it was not a party to the loan agreement and thus cannot be held liable for breaching that agreement; and (2) plaintiffs did not allege that Turner performed her obligations under the loan agreement and therefore Seterus had no duty to perform. Seterus also argues that Zeleny was not a party to the loan agreement.

The gist of plaintiffs' breach of contract cause of action against Seterus was that "when [Seterus] refused to accept Plaintiffs' offer to cure their default, and then when it foreclosed on the Subject Property, [Seterus] breached the original agreement between Plaintiffs and the lender of the Subject Loan." The problem is plaintiffs did not allege that Seterus was a *party* to "the original agreement between [Turner] and the lender." As the loan servicer, Seterus may have been an agent of the original lender or its successor, but "an agent cannot be held liable for breach of a duty which flows from a contract to

28

which he is not a party." (*Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442-1443.)

In their reply brief, plaintiffs "do not deny that [Seterus] is correct on this point." They argue, however, that there is a provision in the deed of trust under which "any obligations set forth in the note and Deed of Trust subsequent to Fannie Mae's purchase of the loan are assumed by the successor loan servicer," i.e., Seterus. That provision states: "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." By itself, however, this provision is not sufficient to show that Seterus, at any time, became a party to "the original agreement between Plaintiffs and the lender." Rather, it is consistent with the idea that the loan servicer, acting as an agent of the lender (or the lender's successor), is responsible for performing *the lender's* mortgage loan servicing obligations to the borrower *under the agency contract between the loan servicer and the lender*. This provision does *not* make the loan servicer a party to the agreement between borrower and lender.

Because Seterus was not a party to the loan agreement, the trial court correctly sustained Seterus's demurrer to the cause of action for breach of contract.

VIII

*Unlawful Business Practices*

The trial court sustained Seterus's demurrer to the tenth cause of action (for unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200 et seq.) without explanation. Nevertheless, the court's likely basis for its ruling is not difficult to divine.

29

In their third amended complaint, plaintiffs alleged that "the unlawful acts and practices of Defendants alleged herein constitute unlawful, unfair or fraudulent business practices within the meaning of" Business and Professions Code section 17200. In support of its demurrer to the tenth cause of action, Seterus argued that this cause of action was "base[d] . . . on the legal theories asserted in the preceding claims. However, as those causes of action fail, they cannot be utilized to state a claim under [Business and Professions Code] section 17200. [I]f a predicate claim fails, so does the [Business and Professions Code] section 17200 claim." Given this argument, the trial court likely sustained Seterus's demurrer to this cause of action because the court had already sustained the demurrer as to all of plaintiffs' other causes of action. We conclude this was error.

" 'Unlawful business activity' proscribed under [Business and Professions Code] section 17200 includes ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.) " '[A]n action based on Business and Professions Code section 17200 to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Business and Professions Code] section 17200 et seq. and subject to the distinct remedies provided thereunder.' " (*Ibid*.)

We have concluded that plaintiffs' third amended complaint adequately states causes of action for intentional and negligent misrepresentation, wrongful foreclosure and negligence. Based on that conclusion, we likewise conclude that plaintiffs have stated a cause of action under Business and Professions Code section 17200 et seq. Paraphrasing Seterus's argument, because some of plaintiffs' predicate claims are valid, their Business and Professions Code section 17200 claim is valid. Accordingly, the trial court erred in sustaining Seterus's demurrer to the cause of action under Business and Professions Code section 17200 et seq.

IX

*Leave To Amend*

Plaintiffs contend the trial court abused its discretion by denying them leave to amend their third amended complaint.  Because we reverse the trial court's order with respect to the causes of action for intentional and negligent misrepresentation, negligence, wrongful foreclosure, and unlawful business practices, we only consider whether plaintiffs showed that they could amend the complaint to state valid causes of action for intentional infliction of emotional distress and breach of contract -- those causes of action to which the demurrer was properly sustained.  In making this argument, however, plaintiffs do not say *how* they would amend their complaint as to these two causes of action.  This omission is fatal.  "To meet the plaintiff's burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action."  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)  Having not attempted such a showing here, plaintiffs have failed to show any abuse of discretion by the trial court.

DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to vacate its order sustaining Seterus's demurrer to the third amended complaint in its entirety without leave to amend and to instead enter a new order sustaining the demurrer without leave to amend as to the causes of action for intentional infliction of emotional distress and breach of contract, and overruling the demurrer as to the causes of action for intentional and negligent misrepresentation, negligence, wrongful

foreclosure, and unlawful business practices.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (3), (5).)

/s/                          ,
Robie, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.