[No. F045318. Fifth Dist. May 19, 2005.]

BANK OF AMERICA, N.A., Plaintiff and Respondent, v.
LA JOLLA GROUP II et al., Defendants and Appellants.

COUNSEL

Pascuzzi, O'Neill & Moore and Susan L. Moore for Defendants and Appellants.

Law Offices of Glenn H. Wechsler and Glenn H. Wechsler for Plaintiff and Respondent.

Kirby & McGuinn, Martin T. McGuinn and Dean T. Kirby, Jr., for United Trustee Association and California Mortgage Association as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**WISEMAN, J.**—This case involves a nonjudicial foreclosure sale conducted by mistake after the homeowner and lender entered into an agreement to cure the homeowner's default and reinstate the loan. The lender did not inform the trustee of the agreement before the scheduled auction at which the property was sold to a third party. The lender sued the buyer to cancel the deed the buyer received after the sale. Judgment was entered for the lender after the court granted its motion for summary adjudication on the issue of ownership of the property. Seeing no merit in the buyer's claim that it received good title despite the mistake on which the sale was based, we affirm.

## *FACTUAL AND PROCEDURAL HISTORIES*

The facts are essentially undisputed. Michael and Ruth Selesia (trustors) owned a house in Fresno. The house was encumbered by a deed of trust securing a loan of $15,000. The loan went into default due to missed payments, and Bank of America, N.A., the lender and beneficiary under the deed of trust (beneficiary), directed trustee Executive Trustee Services, Inc. (trustee), to record a notice of default and election to sell under deed of trust and a notice of trustee's sale. The sale was scheduled for November 12, 2002.

The trustors, or someone acting on their behalf, tendered a payment at a branch of the beneficiary on November 8, 2002. A branch employee accepted the payment and reinstated the loan.

The beneficiary never notified the trustee that the loan had been reinstated, and the foreclosure sale proceeded as planned. Alan Boyajian, acting on behalf of a partnership named La Jolla Group II (La Jolla), submitted the high bid of $15,500. Boyajian, who was in the business of buying properties at foreclosure sales, estimated that the fair market value of the house was $115,000.

The trustee issued a trustee's deed upon sale purporting to convey the property to La Jolla. La Jolla recorded the deed on November 20, 2002. The trustee informed La Jolla on November 25, 2002, that a mistake had been made and the sale should not have gone forward. In spite of this, La Jolla filed an unlawful detainer action against the trustors on December 3, 2002. The trustee recorded a notice of rescission of trustee's deed upon sale on December 5, 2002, and tendered a refund check for $15,500 to La Jolla on December 9, 2002. La Jolla refused to accept the tender.

The beneficiary then filed an action against La Jolla, seeking cancellation of the trustee's deed upon sale. La Jolla filed a cross-complaint for slander of title, requesting cancellation of the notice of rescission of trustee's deed. The trustors also filed an action against the beneficiary, the trustee, and La Jolla. The court consolidated all the actions.

The beneficiary and La Jolla filed cross-motions for summary judgment or summary adjudication. The court granted in part and denied in part each party's motion, ruling in essence that La Jolla had acquired no interest in the property. Specifically, the court (a) granted summary adjudication to the beneficiary on its claims for cancellation of the trustee's deed and for a declaration that the trustee's sale was invalid and conveyed no interest in the property to La Jolla; (b) granted summary adjudication to La Jolla on the trustors' claims for infliction of emotional distress; and (c) denied summary adjudication to La Jolla on its claim for unlawful detainer and on the trustors' claims to set aside the foreclosure sale, for cancellation of the trustee's deed, and for quiet title.

Judgment for the beneficiary was subsequently entered. The court's judgment states, among other things, that the trustee's sale "was void and invalid," that the trustee's deed upon sale "is void and did not convey the property, or any right, title, estate, lien, or interest in the property," and that upon the "timely and proper" recordation of the notice or rescission, all liens and lienholders "were restored to the condition of record title as it existed immediately prior to the recordation of the Trustee's Deed Upon Sale on November 20, 2002." La Jolla appealed.

## *DISCUSSION*

■ La Jolla admits that the material facts are not in dispute and that all the issues can be resolved as a matter of law. We review an order granting summary adjudication under the same standard as an order granting summary judgment. (*Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 648 [96 Cal.Rptr.2d 874].) Our review is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

I. *Invalidity of the foreclosure sale*

In *Bisno v. Sax* (1959) 175 Cal.App.2d 714 [346 P.2d 814], it was held that the tender and acceptance of a payment sufficient to cure a default on a loan secured by a deed of trust reinstated the loan and deprived the trustee of the power to foreclose. Under a deed of trust, the home of the trustor, Bisno, secured a loan from the beneficiary, Sax. Bisno defaulted on the loan and, on Sax's instructions, the trustee recorded a notice of default and election to sell. (*Id.* at p. 718.) Bisno tendered a payment to cure the default, but it was rejected because the amount was insufficient. (*Id.* at p. 719.) Bisno then sued to stop the foreclosure sale. He obtained a preliminary injunction conditioned on his payment of an amount sufficient to cure the default. Bisno paid the required amount, and Sax received his check, but claimed it was late and held it while the trial on Bisno's action proceeded. Bisno lost at trial, and Sax returned the payment. (*Id.* at pp. 720–721.) The preliminary injunction was dissolved and the trustee sold the property to a third party at a foreclosure sale. (*Id.* at pp. 720, 730.)

 The Court of Appeal reversed on the grounds that (a) Bisno's payment pursuant to the court's order on the preliminary injunction was timely; (b) Sax's holding of the check during the trial constituted acceptance; and (c) the default was therefore cured. (*Bisno v. Sax, supra,* 175 Cal.App.2d at pp. 721, 723.) For these reasons, the foreclosure sale held after the trial was invalid: "[D]efendant should not be permitted to accept the money tendered in discharge of a defaulted obligation and retain the advantage of collecting that same amount through a foreclosure proceeding or otherwise." (*Id.* at p. 723.) The court elaborated: "Speaking generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default and precludes a foreclosure sale based upon such preexisting delinquency. . . . [¶] . . . In the instant case all installments of principal and interest payable before the trial (absent acceleration) had been paid and accepted by respondent beneficiary. At the time of that hearing the only basis left for a foreclosure sale was the bare fact of notice of acceleration, for all installments otherwise in default had been paid. To sustain a foreclosure at that time, based upon defaults which had been cured, would amount to enforcement of a penalty or a forfeiture, a thing which equity abhors." (*Bisno v. Sax, supra,* 175 Cal.App.2d at pp. 724–725.) Finally, the court held that "the lower court should have concluded and declared that all defaults under the trust deed had been cured and that [Bisno was] entitled to a reconveyance upon payment of subsequently accruing sums." (*Id.* at p. 731.)

■ We agree with *Bisno*. A power of sale in a deed of trust is a creature of contract, arising from the parties' agreement. "The power of sale only exists if it is expressly granted by the trustor in the security documents." (4 Miller & Starr, Cal. Real Estate (3d ed. 2003) § 10:123, p. 381.) The statutory scheme governing nonjudicial foreclosures does not expand the beneficiary's sale remedy beyond the parties' agreement, but instead provides additional protection to the trustor: "Statutory provisions regarding the exercise of the power of sale provide substantive rights to the trustor and limit the power of sale for the protection of the trustor." (*Ibid.*) As is typical, the deed of trust involved in this case allows the beneficiary to exercise its power of sale only if an "event of default" occurs. If, after a default, the trustor and beneficiary enter into an agreement to cure the default and reinstate the loan, no contractual basis remains for exercising the power of sale.

In this case, it is undisputed that the trustor and beneficiary entered into an agreement to cure the default. It follows that the beneficiary had no right to sell afterward. Therefore, the foreclosure sale was invalid.

■ La Jolla argues that the agreement to cure the default did not invalidate the sale because it did not take place within the time statutorily granted to a trustor to cure a default as a matter of right. Civil Code section 2924c, subdivisions (a)(1) and (e),[1] provide that a trustor has a right to cure a default and reinstate a loan "at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale." (§ 2924c, subd. (e).) Here, the trustor cured the default on November 8, 2002, and the sale was set for November 12, 2002, fewer than five days later.

Section 2924c is irrelevant here, so the trustor's failure to cure within the statutory period has no significance. We are dealing with a cure and reinstatement by mutual consent, not one forced on the beneficiary by statute. As stated above, the nonjudicial foreclosure statutes limit the beneficiary's contractual power of sale. Section 2924c limits the beneficiary's power of sale by giving the trustor a right to cure a default and reinstate the loan within the stated time, even if the beneficiary does not voluntarily agree. This can hardly be interpreted as eliminating the parties' ability to enter voluntarily into an agreement to cure the default and reinstate the loan after the statutory period. We seriously doubt that the Legislature intended to prevent lenders and borrowers from adjusting delinquencies by mutual consent.

---

[1] Subsequent statutory references are to the Civil Code.

La Jolla also argues that a mistake caused by the beneficiary's own negligence cannot form the basis of an attack on a foreclosure sale. La Jolla relies on *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279 [102 Cal.Rptr.2d 711]. In *6 Angels*, the beneficiary meant to tell the trustee to start the bidding at a foreclosure auction at $100,000. But because of the beneficiary's clerical error, the trustee started the bidding at $10,000, and the property was sold for $10,000.01. (*Id.* at p. 1282.) The court held that this mistake was " 'dehors [i.e., outside] the sale proceedings,' " and there was "no procedural error here independent of the inadequacy of price . . . ." Therefore, the sale could not be set aside. (*Id.* at p. 1285.) This holding is inapplicable here. In *6 Angels*, a beneficiary with the contractual right to foreclose carried out a procedurally correct foreclosure but made a clerical error resulting in injury only to itself. In the present case, the beneficiary's mistake resulted in a sale the beneficiary had no power to conduct, to the detriment of the trustor.

■ Apart from the considerations discussed above, "there is a common law rebuttable presumption that a foreclosure sale has been conducted regularly and fairly." (4 Miller & Starr, *supra*, § 10:211, p. 679; see also *Stevens v. Plumas Eureka Annex Min. Co.* (1935) 2 Cal.2d 493, 497 [41 P.2d 927].) But La Jolla has not relied on this presumption and, if it had, we would have concluded that the presumption was rebutted by the fact that the trustor and beneficiary entered into an agreement to cure the default and reinstate the loan before the foreclosure sale. In sum, the foreclosure sale was invalid.

## II. *Rights of third-party buyer*

■ La Jolla argues that even if the foreclosure constituted a violation by the beneficiary of the rights of the trustor, the trustee's deed that La Jolla received and recorded conveyed unassailable title to it, because it was a bona fide purchaser. This argument is based on certain statutory presumptions that become effective when a trustee's deed containing prescribed recitals is delivered to a bona fide purchaser. The beneficiary argues that La Jolla was not a bona fide purchaser because it is a professional foreclosure-sale buyer and obtained the property at a fraction of its fair market value.

Like the statutory provisions regarding reinstatement, the provisions La Jolla relies on regarding the rights of a recipient of a trustee's deed have no effect on this case. The provisions in question establish presumptions about the adequacy of *notices* related to a foreclosure sale: "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of

default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice." (§ 2924.) There is no contention in this case that the foreclosure sale was not properly noticed. The sale was improper because the loan was current and therefore the beneficiary had no right to exercise the power of sale. No statute creates a presumption—conclusive or otherwise—for any purchaser—bona fide or otherwise—that any recitals in a trustee's deed render effective a sale that had no contractual basis.

Courts have occasionally suggested that the notice-related presumptions of section 2924 imply more comprehensive presumptions about the propriety of a foreclosure sale. For instance, in *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831–832 [30 Cal.Rptr.2d 777], the court asserted in dictum that "[t]he conclusive presumption [created by section 2924] precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor." But *Moeller* cites no authority for this proposition, and it is impossible to see how it is supported by a statute that describes in such great detail the notice requirements to which it specifically pertains. In *Moeller* itself, the court rejected a trustor's effort to set aside a foreclosure sale partly on the basis of the section 2924 presumptions, but the court's primary holding was that the beneficiary *properly refused* a tender of the amount due and therefore "there were no grounds for attacking the validity of the sale . . . ." (*Id.* at p. 833.) This contrasts sharply with the situation here, in which the beneficiary *accepted* the tendered cure payment and thereby deprived the sale of any proper basis.

Miller and Starr assert that "[t]he statutory presumption [created by section 2924] only applies to the propriety of the required notices, [and] it does not apply to other requirements of the foreclosure process." (4 Miller & Starr, *supra*, § 10:211, p. 680.) For the reasons stated above, we agree.

Miller and Starr also state, in another section, that "[u]pon delivery of the trustee's deed to a third party purchaser, the recitals in the deed create a conclusive presumption in favor of the purchaser and the sale may not be set aside in the absence of fraud." (4 Miller & Starr, *supra*, § 10:206, p. 661.) They cite *Moeller v. Lien, supra,* 25 Cal.App.4th at page 833. As our discussion above indicates, this proposition is far too broad (not to mention inconsistent with Miller & Starr's own assertion a few pages later). The section 2924 presumptions pertain only to notice requirements, not to every defect or inadequacy short of fraud.

■ Of course, the advantages of being a bona fide purchaser are not limited to the presumptions set forth in section 2924. Primarily, the doctrine of bona fide purchase gives a bona fide purchaser priority over earlier-arising unrecorded interests of which the bona fide purchaser had no notice. (See generally 5 Miller & Starr, *supra*, §§ 11:49–11:57.) But La Jolla does not argue that bona fide purchaser status supports its case in any way other than through the statutory provisions we have found inapplicable.

La Jolla also argues that its title is valid and cannot be disturbed even if it were not a bona fide purchaser because a deed was delivered to it and was recorded. "Once the trustee's deed upon sale has been delivered with all the recitals of statutory compliance and the recital of authority under the power of sale," La Jolla contends, "the deed cannot be 'void' as a matter of law."

We know of no authority for this proposition. The two cases La Jolla cites fail to support it. In *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807 [134 Cal.Rptr.2d 162], a foreclosure auction was held mistakenly after the trustor and beneficiary agreed to postpone it but failed to inform the trustee of their agreement. The trustee then learned of the agreement and refused to deliver a deed to the high bidder. (*Id.* at pp. 811–812.) The Court of Appeal affirmed the trial court's ruling granting summary judgment against the bidder. (*Id.* at pp. 813, 829.) It held that the fact the deed was never delivered prevented any presumptions based on recitals in the deed from taking effect. (*Id.* at p. 823.) Therefore, the general rule that "[o]nly a properly conducted foreclosure sale, free of substantial defects in procedure, creates rights in the high bidder at the sale" was the controlling proposition. (*Id.* at p. 822.) The court stated that "[i]t *might* be a different case had the trustee's deed been issued," but declined to pronounce upon that question. (*Id.* at p. 823, italics added.) "We need not decide," it averred, "whether the section 2924 conclusive presumption created by a trustee's deed containing the requisite recitals applies to a defect in the statutory foreclosure proceedings other than a defect in giving the required notices." (*Id.* at p. 823, fn. 4.) The case therefore stands for no more than that an undelivered trustee's deed cures no defects in the sale. It does not hold that a delivered one cures all.

*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354 [233 Cal.Rptr. 923] also does not help La Jolla's case. In *Little*, a foreclosure sale was held after the trustor defaulted on the loan. After the sale, the trustee discovered that the required notices had never been sent to the trustor, a junior lienholder, or a judgment creditor. It refused to deliver a deed to the high bidder. (*Id.* at pp. 1356–1357.) In affirming the trial court's judgment that the

sale was void, the court simply held that the notice defects vitiated the sale and the notice-related presumptions associated with the trustee's deed could not save the sale because the deed was never delivered. (*Id.* at p. 1361.) This holding implies nothing about the situation before us now, in which the deed was delivered, but, for reasons unrelated to notice defects, the beneficiary had no right to sell.

■ We are aware, finally, that a deed of trust can authorize the inclusion, in a trustee's deed upon sale, of nonstatutory recitals on subjects other than notice and can state that such recitals will be deemed presumptively true at the time of foreclosure. These can include a recital that a default has occurred and has not been cured. The effect of such an authorization is uncertain in light of section 2953, which prohibits waivers of trustors' rights, because the authorization might constitute an improper waiver of a right to show that the recital is factually untrue. (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 3d ed., 2004 update) § 7.58, pp. 521–522.) In this regard, we need only note that the deed of trust at issue in this case could not support a *conclusive* presumption that an uncured default actually existed, even if the trustee's deed contained a recital to that effect. The deed of trust authorized only a *rebuttable* presumption in favor of the truth of recitals in the trustee's deed: "Trustee shall deliver to the [foreclosure] purchaser [a] trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the trustee's deed shall be *prima facie evidence* of the truth of the statements made therein." (Italics added.)[2] Here, any recital that an uncured default existed was rebutted by the fact that the trustor and beneficiary entered into an agreement to cure the default.[3]

---

[2] The short form deed of trust in this case incorporated by reference a "Fictitious Deed of Trust" that was also recorded with the county recorder. The Fictitious Deed of Trust contains the quoted authorization.

[3] The trustee's deed issued to La Jolla contained the following recitals:

"This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by [trustors] . . . under the authority and powers vested in the Trustee . . . , default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust . . . . Trustee [has] complied with all applicable statutory requirements . . . and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

"All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with."

For all these reasons, we conclude that La Jolla has not shown that it obtained an interest in the property despite the invalidity of the foreclosure sale.

## III. *Effect of notice of rescission*

The parties disagree about the effect of the notice of rescission filed by the trustee after the sale. The recordation of a notice of rescission is authorized by section 1058.5, subdivision (b): "Where a trustee's deed is invalidated by a pending bankruptcy or otherwise, recordation of a notice of rescission of the trustee's deed . . . shall restore the condition of record title to the real property described in the trustee's deed and the existence and priority of all lienholders to the status quo prior to the recordation of the trustee's deed upon sale. Only the trustee or beneficiary who caused the trustee's deed to be recorded, or his or her successor in interest, may record a notice of rescission." The beneficiary argues that the trustee properly recorded the notice of rescission under this statute, and that the notice caused title to revert to its condition before the sale. La Jolla argues that because the sale was valid, it was the successor in interest of the beneficiary and trustee. Therefore, it contends, the beneficiary and trustee lost the power to file a notice of rescission, and only La Jolla could have filed it.

■ Our holding that the sale was not valid and La Jolla took no interest in the property disposes of La Jolla's contention that it was a successor in interest. It does not follow from this, however, that the notice was properly recorded. Section 1058.5, subdivision (b), permits a notice of rescission to be filed when a trustee's deed *"is invalidated by* a pending bankruptcy or otherwise . . . ." (Italics added.) On December 5, 2002, when the notice of rescission was filed, neither the beneficiary nor the trustors had filed their complaints challenging La Jolla's interest, let alone obtained judgments. It is not clear, therefore, that it can be said that the deed was "invalidated by" anything at that time.

The question is now moot, however, so we do not decide it. The trustee's deed has been invalidated now, and the trial court's judgment placed the parties in the proper positions. There is no reason to disturb the judgment.

## *DISPOSITION*

The judgment is affirmed. Costs are awarded to respondent.

Ardaiz, P. J., and Dawson, J., concurred.

On June 15, 2005, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied September 7, 2005. Baxter, J., and Chin, J., did not participate therein.