Filed 5/3/23  Annotti v. Ouita Martin CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GINA ANNOTTI et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>OUITA MARTIN, LLC,<br><br>    Defendant and Respondent. | H049509<br>(San Benito County<br>Super. Ct. No. CU1900102) |

Defendant Ouita Martin, LLC (Martin) purchased plaintiffs' home at a nonjudicial foreclosure sale.  Plaintiffs sued Martin, as well as their lender and the trustee of the sale, and Martin demurred.  The trial court sustained Martin's demurrer without leave to amend, and plaintiffs appeal from the judgment dismissing the causes of action against Martin for declaratory relief, wrongful foreclosure, to set aside the trustee's sale, and to quiet title.  According to plaintiffs, the complaint can be amended to sufficiently allege both that the lender foreclosed on plaintiffs' home without any contractual authority to do so and that the sale of plaintiffs' home was barred by Civil Code section 2923.6.  Although we conclude that the complaint cannot be amended to sufficiently allege a lack of contractual authority, it could be amended to sufficiently allege a statutory violation.  We will therefore reverse and remand to allow plaintiffs to make that amendment.

## I.    BACKGROUND

Plaintiffs Gina Annotti and George Oliveira purchased a home in Hollister in 1998.  They refinanced and executed a Deed of Trust in 2005.  The 2005 Deed of Trust

provides that the lender will apply plaintiffs' payments in the following order: (1) prepayment charges; (2) advances; (3) taxes and insurance; (4) interest; (5) deferred interest; (6) principal; and (7) late charges. It also provides that the lender "may exercise the power of sale" in the event of a breach of duty by plaintiffs.

Plaintiffs defaulted on their mortgage after the 2008 economic downturn left them unable to make their monthly payments. Their lender, Wells Fargo Bank, first recorded a notice of default in August 2009. Plaintiffs' loan was then reinstated the day before a scheduled trustee's sale. Wells Fargo recorded a second notice of default in July 2011 and cancelled that notice four months later. Finally, Wells Fargo recorded a third notice of default in April 2012. The April 2012 notice of default served as the " 'operative notice of default' " for the eventual nonjudicial foreclosure sale of plaintiffs' home in May 2019.

Between the April 2012 notice of default and the May 2019 trustee's sale, plaintiffs engaged in various attempts to prevent foreclosure. They applied for a loan modification in 2015, and Oliveira filed for Chapter 13 bankruptcy protection after a Wells Fargo representative advised that bankruptcy was the only way for plaintiffs to save their home. The scheduled trustee's sale was postponed, Oliveira voluntarily dismissed his bankruptcy filing, and plaintiffs' loan modification request was denied. In 2017, plaintiffs again sought a loan modification unsuccessfully. Annotti filed for Chapter 13 bankruptcy protection in March 2017 after Wells Fargo again advised her that bankruptcy would be necessary to avoid foreclosure. During Annotti's bankruptcy, Wells Fargo accepted nine payments from plaintiffs. Annotti's bankruptcy case was dismissed in June 2018 after she was unable to make the payments required under the reorganization plan. Following the dismissal of Annotti's bankruptcy proceeding, plaintiffs sent Wells Fargo a check in the amount of $24,368. Wells Fargo returned the check without explanation in August 2018. As of April 30, 2019, the minimum amount due to reinstate plaintiffs' loan was $329,863.80.

2

On May 8, 2019, a friend informed Oliveira that plaintiffs' home was listed in the Trustee Sales section of a local newspaper. The trustee's sale was scheduled for May 23. Annotti immediately called Wells Fargo and spoke to an agent, who told her that plaintiffs qualified for a loan modification review and instructed her to submit certain documents by May 19. Annotti faxed the requested documents to Wells Fargo on May 10. Having received no response, Annotti called Wells Fargo on May 15 and was told by another agent that Wells Fargo had not received the documents. Annotti faxed the documents to Wells Fargo again on May 16 from a Wells Fargo branch office. Annotti called Wells Fargo the following day to confirm that the application had been received. Multiple agents assured her that the application was complete and under consideration. One agent told her that Wells Fargo had requested postponement of the trustee's sale and suggested that she call again the following Monday, May 20, for an update.

Annotti called Wells Fargo on the morning of May 20 and spoke to yet another agent, who told her that the request for a loan modification review had been denied due to insufficient documentation. When Annotti explained that she had submitted all of the requested documents, the agent acknowledged that she had been given incorrect instructions. The agent asked Annotti to submit additional documents by 4:00 p.m., which she did. Annotti followed up several more times before the May 23 trustee's sale, and was given inconsistent information. On May 22, one agent told Annotti that the sale could be postponed if she provided a letter of intent to submit an immediate payment of $20,000 and bring payments current within six months. On the morning of May 23, numerous agents told Annotti that the application was still under consideration. One agent eventually told her that the application had been denied, but another then told her that Wells Fargo "ran out of time" to review the application. Although an agent informed Annotti on May 23 that Wells Fargo was still seeking to postpone the trustee's sale, and

3

plaintiffs faxed a letter of intent to reinstate the loan to Wells Fargo at 10:59 a.m., the sale proceeded as scheduled at 11:30 a.m.

Martin purchased plaintiffs' home at the trustee's sale, tendering $837,862. Martin purchased at least four other properties from the same trustee at foreclosure sales in Monterey County between July 2016 and July 2019, and has also purchased at least four other properties at foreclosure sales in San Benito County since 2015. On June 5, 2019, Martin recorded the trustee's deed and served plaintiffs with a notice to quit the property. Plaintiffs then filed this action on June 7, 2019. The operative second amended complaint purports to state causes of action against Martin for declaratory relief, for wrongful foreclosure, to set aside the trustee's sale, and to quiet title. Martin demurred, and the trial court sustained the demurrer without leave to amend. Plaintiffs appeal from the judgment dismissing their four causes of action against Martin.

## II.   DISCUSSION

Our review of a sustained demurrer is de novo. We will reverse the judgment of dismissal if the allegations in the complaint state a cause of action under any legal theory. (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1091.) We review the issue of leave to amend the complaint for abuse of discretion. Although plaintiffs here did not request leave to amend in the trial court (Code Civ. Proc., § 472c, subd. (a)), we will reverse and remand if there is a reasonable possibility that amendment could cure any defects in the complaint. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 439.) We will affirm the judgment if the facts are not in dispute and no liability exists under substantive law. (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436–437.)

### A.   FIRST CAUSE OF ACTION

The trial court sustained without leave to amend Martin's demurrer to plaintiffs' cause of action for declaratory relief. Plaintiffs do not challenge the trial court's decision as to that cause of action. Although plaintiffs claim in their brief to "reserve their right to

4

amend their first cause of action" in the event of a reversal, a complaint may be amended after successful demurrer only to the extent authorized by the underlying order. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) Because plaintiffs do not contend on appeal that the trial court erred in sustaining Martin's demurrer to the first cause of action without leave to amend, and do not provide any explanation of how they might amend that cause of action, we will instruct the trial court to once again sustain Martin's demurrer to that cause of action without leave to amend.

## B.    FOURTH AND EIGHTH CAUSES OF ACTION[1]

The trial court sustained Martin's demurrer without leave to amend plaintiffs' causes of action for wrongful foreclosure and to set aside the trustee's sale. "The basic elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale." (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.) And while plaintiffs style their complaint as stating separate causes of action for wrongful foreclosure and to set aside the trustee's sale, they seek the same remedy for each—a judgment setting aside the trustee's sale. We therefore analyze both causes of action together, and find a reasonable possibility that either can be amended to state an equitable cause of action against Martin.

The basic elements of a cause of action to set aside a foreclosure sale are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor

---

[1] The cause of action to set aside the trustee's sale is listed in the complaint as plaintiffs' "eighth cause of action." It follows another cause of action, not pleaded against Martin, also listed as the "eighth cause of action." Because the trial court refers to the relevant cause of action as the "eighth cause of action" in the portion of its decision discussing Martin's demurrer, and plaintiffs also refer to it as such in their appellate briefs, we do the same here to avoid confusion.

tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104 (*Lona*).) Plaintiffs assert they can amend the complaint to satisfy the first element in two distinct ways: first, by alleging that Wells Fargo lacked contractual authority to sell plaintiffs' home; and second, by alleging that the sale violated Civil Code section 2923.6.

### 1. Power of Sale

#### a. Contractual Authority

Plaintiffs contend the trustee's sale was illegal because Wells Fargo lacked contractual authority to foreclose given the facts alleged. They cite *Bank of America, N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706 (*La Jolla*), which concerned "a nonjudicial foreclosure sale conducted by mistake after the homeowner and lender entered into an agreement to cure the homeowner's default and reinstate the loan." (*Id.* at p. 709.) The *LaJolla* court concluded that the sale could be invalidated despite the involvement of a third-party purchaser because the "power of sale in a deed of trust is a creature of contract" and "the beneficiary had no right to sell" after reaching an agreement with the trustor to cure the default and reinstate the loan. (*Id.* at p. 712.) Here, plaintiffs suggest that Wells Fargo had no right to sell their home after accepting nine payments during Annotti's bankruptcy. But in *La Jolla*, it was "undisputed that the trustor and beneficiary entered into an agreement to cure the default" (*ibid.*), whereas plaintiffs have not alleged facts to demonstrate the existence of a specific agreement in this case.

Chapter 13 bankruptcy may have offered plaintiffs an *opportunity* to cure their default, but the nine payments they made to Wells Fargo in the course of Annotti's bankruptcy proceeding would not alone cure the default. (See *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 228–230 [discussing relationship between Chapter 13 bankruptcy process and mortgage reinstatement process].) And that proceeding was ultimately dismissed because Annotti was unable to make the required payments.

6

Plaintiffs do not allege facts showing they reached an agreement with Wells Fargo to reinstate their loan outside of the bankruptcy process. To the contrary, they allege Wells Fargo told them multiple times that bankruptcy was the only way to save their home.

Plaintiffs also allege that Wells Fargo returned the one payment of $24,368 they submitted after the dismissal of Annotti's bankruptcy case. Plaintiffs characterize Wells Fargo's failure to accept that payment as a breach of contract constituting an independent basis for the sale's illegality (asserting the Deed of Trust required Wells Fargo to apply the payment to their outstanding debt), but they point to no legal authority or contractual provision suggesting that Wells Fargo's power of sale was contingent upon its acceptance and application of the payment.

On the facts pleaded, plaintiffs have not sufficiently alleged Wells Fargo lacked contractual authority to sell their home. We see no reasonable possibility to cure that defect through amendment, as facts already set forth in the complaint contravene their legal theory.

### b. Civil Code Section 2923.6

Plaintiffs contend that the trustee's sale was prohibited by Civil Code section 2923.6,[2] which provides that if "a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." (§ 2923.6, subd. (c).) An application is complete for purposes of the statute "when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." (§ 2923.6, subd. (h).)

---

[2] Unspecified statutory references are to the Civil Code.

7

The second amended complaint does not expressly allege that the sale of plaintiffs' home violated section 2923.6, but does allege that Wells Fargo engaged in a practice known as "dual tracking" that the statute prohibits. ("Dual tracking" is an apparent reference to simultaneous pursuit of foreclosure and consideration of foreclosure prevention alternatives such as loan modification.) The complaint alleges that Annotti spoke to Wells Fargo about a loan modification on May 8, 2019 and was told to submit certain documents by May 19 (four calendar days before the trustee's sale scheduled for May 23). She submitted those documents on May 10 and again on May 16. Multiple Wells Fargo agents assured her on May 17 that the loan modification application was complete, although she would later be told to submit additional documents. On those facts, plaintiffs have sufficiently alleged that they submitted a complete application at least five business days before the scheduled trustee's sale. They also represent that they can amend the complaint, which already alleges that their 2019 loan modification application included new information, to make clear that the application reflected a material change in their financial circumstances since the denial of their previous applications in 2015 and 2017. (See § 2923.6, subd. (g) ["In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."].)

Plaintiffs further allege that their application remained pending at the time of the trustee's sale. As late as the morning of the sale, several Wells Fargo agents told Annotti that the application was still being considered. Another agent told her that the application had been denied, but that verbal statement is of no moment because section 2923.6,

8

subdivision (c)(1) prohibits a trustee's sale following the denial of a loan modification application until the lender reduces the denial to writing and gives the borrower at least 30 days to appeal the decision. Failure to do so is not a mere "technical" violation. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 312 (*Morris*).) The complaint can thus be amended to state that the sale of plaintiffs' home was illegal under section 2923.6, establishing the first element of a cause of action to set aside a foreclosure sale.

(We separately address, *post*, Martin's argument that even if the sale violated § 2923.6, plaintiffs cannot state a cause of action as to Martin based on that violation because § 2924.12 limits plaintiffs to a private right of action against the lender or trustee, and Martin is a bona fide purchaser of the property.)

## 2. Prejudice or Harm

As to the second element of their fourth and eighth causes of action, plaintiffs sufficiently allege prejudice or harm by pleading that the unauthorized foreclosure resulted in the sale of their longtime family home. (See *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 999 (*Orcilla*) [parties seeking to set aside foreclosure sale based on unconscionability of underlying loan adequately alleged harm by pleading that " 'they were harmed by the sale of their home of 18 years' "].) Plaintiffs do not seek leave to challenge the sale based on a procedural irregularity (e.g., an incorrect date in the notice of sale; see *id.* at p. 1002). Rather, they contend that their substantive rights were violated by the sale of their home while their loan modification application was pending, and had the application been given full and fair consideration, plaintiffs may have demonstrated they were eligible for a modification. (See *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1304 (*Majd*).) Under those circumstances, the sale itself satisfies the second element of a cause of action to set aside a foreclosure sale.

9

### 3. Tender Requirement

A borrower may not challenge a foreclosure sale unless the borrower "tendered the amount of the secured indebtedness or was excused from tendering." (*Lona*, *supra*, 202 Cal.App.4th at p. 104.) There are four recognized exceptions to the tender requirement: (1) the underlying debt is unenforceable; (2) the borrower has a setoff sufficient to cover the debt; (3) it would be inequitable to impose a tender requirement on the party challenging the sale; or (4) the trustee's deed is void. (*Id.* at pp. 112–113.) The latter two exceptions are relevant here.

The tender requirement "arises out of a paradigm where, *by definition*, there is no way that a foreclosure sale can be avoided absent payment of *all* the indebtedness." (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 225.) That is not the case when a loan modification application is pending, as the purpose of a modification "is to avoid a foreclosure despite the borrower being incapable of complying with the terms of the original loan." (*Majd*, *supra*, 243 Cal.App.4th at p. 1306.) "It would be contradictory to require the borrower to tender the amount due on the original loan in such circumstances." (*Ibid.*) A complaint alleging that the sale of plaintiffs' home was barred by their pending loan modification application would thus adequately allege that plaintiffs were excused from tendering.

### 4. Martin's Defenses

Martin raises numerous defenses, which largely turn on bona fide purchaser status. Martin asserts lack of notice of plaintiffs' claim, as well as the applicability of statutory presumptions regarding the validity of the sale. We address the defenses in turn. Martin further argues that the availability of a private right of action precludes plaintiffs from seeking to unwind the trustee's sale.

#### a. Martin's Bona Fide Purchaser Status

In order to qualify as a bona fide purchaser, a buyer must "(1) purchase the property in good faith *for value*, and (2) have no knowledge or notice of the asserted

rights of another." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 (*Melendrez*).) Constructive notice, or knowledge of circumstances which upon reasonable inquiry would lead to actual notice of another's rights, will suffice to defeat an assertion of bona fide purchaser status. (*Id.* at pp. 1251–1252.) A bona fide purchaser at a nonjudicial foreclosure sale generally takes title free and clear of any claim to the property by the trustor, so long as the purchaser lacks notice of such a claim. A bona fide purchaser may rely on that defense unless the sale was somehow void. (*La Jolla*, *supra*, 129 Cal.App.4th at p. 715.)

Plaintiffs allege in the second amended complaint that Martin is not a bona fide purchaser because Martin had notice of a deficiency in the 2012 notice of default that served as the basis for the 2019 trustee's sale. (That notice of default was accompanied by a declaration stating that Wells Fargo had tried with due diligence to contact the borrower, as required by section 2923.5, but the declaration was deficient in that it named only Oliveira as the borrower and omitted Annotti.) The trial court found that the alleged deficiency in the declaration would be insufficient to establish that Martin was "anything but a bona fide purchaser." In essence, the court reasoned that because the deficiency was a mere procedural irregularity from which plaintiffs had alleged no prejudice, the presumption of fairness and regularity applicable to nonjudicial foreclosure sales should prevail over assertable rights of which Martin could have had notice.

Given that plaintiffs could amend the complaint to allege that their substantive rights were violated and they suffered prejudice or harm as a result (as we have explained), we are also called upon to determine whether they could amend the complaint to allege that Martin had actual or constructive notice of such a violation and an associated claim. As plaintiffs note, the complaint alleges that Martin is an experienced purchaser of properties at foreclosure sales. Plaintiffs contend that Martin, with that experience, should have inquired into the reason for a seven-year gap between the notice of default and the notice of sale. According to plaintiffs, the only reasonable explanation

11

for the "highly unusual" gap would be that plaintiffs had made efforts to modify or reinstate their loan, and reasonable inquiry would have revealed that plaintiffs had in fact made several applications for a loan modification, including the one submitted shortly before the trustee's sale.

Martin (characterizing plaintiffs' point as a "clearly ridiculous and pathetic suggestion") responds that a similar argument was rejected in *Melendrez*, *supra*, 127 Cal.App.4th at pp. 1254–1255. We find, however, that *Melendrez* better supports plaintiffs' position. In *Melendrez*, a panel of this court noted the issue of a buyer's bona fide purchaser status is a question of fact, and under the facts of that case, knowledge of a repayment agreement between the lender and the borrowers could not be imputed to the third-party purchaser. (*Id.* at p. 1254–1255.) But *Melendrez* does not suggest that knowledge of borrowers' attempts to modify or reinstate their loans cannot be imputed to third-party purchasers as a matter of law. To the contrary, the court observed that "the buyer's foreclosure sale experience may be considered in making the factual determination of whether he or she had knowledge or notice of the conflicting claim." (*Id.* at p. 1253, fn. 23.) That factual determination cannot be resolved here at the demurrer stage. And the circumstances in *Melendrez* did not involve a lengthy gap between a notice of default and a foreclosure sale.

Although we see a reasonable possibility that plaintiffs could amend the complaint to adequately allege that Martin is not a bona fide purchaser, we express no opinion as to whether plaintiffs will ultimately be able to prove that the seven-year gap between the 2012 notice of default and the 2019 notice of sale is as significant as they suggest. We conclude only that, by pleading that Martin's experience as a purchaser of properties at foreclosure sales would have reasonably led to further inquiry, plaintiffs could make allegations sufficient to overcome a demurrer deriving from Martin's status as a bona fide purchaser.

12

### b. Civil Code Section 2924

Under section 2924, subdivision (c), a bona fide purchaser is entitled to rely on a conclusive statutory presumption that the sale was properly noticed. (That presumption is rebuttable as to non-bona fide purchasers.) Significantly, the presumption applies only to the propriety of the statutorily required notices; it does not protect even a bona fide purchaser from a challenge to a foreclosure sale based on other types of defects. (See, e.g., *Orcilla*, *supra*, 244 Cal.App.4th at pp. 999–1000 [presumption did not bar action based on unconscionability of underlying loan]; *La Jolla*, *supra*, 129 Cal.App.4th at pp. 713–715 [presumption did not bar action based on agreement to cure default and reinstate loan].) Because plaintiffs' appellate contentions are not premised on the statutory notice requirements, the section 2924 presumption is inapposite.

### c. Civil Code Section 2924.12

Section 2924.12 provides a private right of action to borrowers for material violations of section 2923.6, the statute that plaintiffs contend barred the sale of their home. Before a trustee's deed is recorded, "a borrower may bring an action for injunctive relief to enjoin a material violation of" section 2923.6. (§ 2924.12, subd. (a)(1).) After the trustee's deed is recorded, "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages" resulting from a material violation. (*Id.*, subd. (b).) A violation does not "affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice." (*Id.*, subd. (e).)

Plaintiffs commenced this lawsuit two days after the trustee's deed was recorded. Based on that fact and the language of section 2924.12, Martin argues that plaintiffs may seek only economic damages from the beneficiary or trustee. But while a violation of section 2923.6 may not "affect the validity of a sale in favor of a bona fide purchaser" (§ 2924.12, subd. (e)), it does not follow that a violation cannot affect the validity of a sale to *any* third-party purchaser. And section 2924.12 also "contains a broad saving

13

clause preserving preexisting remedies." (*Morris*, *supra*, 78 Cal.App.5th at p. 315; see § 2924.12, subd. (g) ["The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law.  Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law."].)  Those remedies include common-law tort claims for wrongful foreclosure (*Morris*, *supra*, 78 Cal.App.5th at p. 315), as well as actions to set aside a foreclosure sale and to quiet title.  Section 2924.12 therefore does not dispose of the claims against Martin.

### d.  Remaining Defenses

Other defenses raised relate to the trial court's decision on Martin's demurrer but are not relevant to the issues on appeal.  Martin urges that plaintiffs were not prejudiced by the alleged deficiency in the 2012 notice of default.  Although the trial court referenced the complaint's lack of such an allegation, plaintiffs have not advanced that argument on appeal; they argue their harm was from the sale of their home while their loan modification application was pending.  Martin also contends that the private right of action provided by section 2924.19 for violations of section 2923.5 bars plaintiffs' claims.  Here again, plaintiffs have not argued on appeal that the sale of their home violated section 2923.5.  Finally, Martin asserts that the trustee's sale is "final" as that term is defined in section 2924h, subdivision (c).  But as we will explain in the following analysis of plaintiffs' quiet title cause of action, that section does not insulate Martin from any and all claims.

### C.  NINTH CAUSE OF ACTION[3]

Plaintiffs' cause of action to quiet title is tied to their fourth and eighth causes of action (for wrongful foreclosure and to set aside the trustee's sale).  Their claim to title is

---

[3]  The cause of action to quiet title appears in the complaint as plaintiffs' "ninth cause of action."  Because the complaint includes two "eighth" causes of action, the quiet title cause of action is actually the tenth listed cause of action (see fn. 1, *ante,* p. 5).  To

(*Continued*)

14

based on the alleged wrongful foreclosure, and they seek the same remedy for all three causes of action. The trial court sustained Martin's demurrer based on its finding that Martin was a bona fide purchaser. On appeal, plaintiffs contend the trial court was incorrect to dismiss the ninth cause of action for the same reasons dismissing the fourth and eighth causes of action was incorrect. Martin similarly does not distinguish among the three causes of action in its appellate brief.

Specifically as to title, Martin asserts plaintiffs cannot claim title to the property because Martin perfected title by timely recording the trustee's deed. Martin refers to former section 2924h, subdivision (c), which provided that a trustee's sale is deemed "final" when the last and highest bid is accepted, and the purchaser's title is deemed "perfected" as of 8:00 a.m. on the day of the sale if the trustee's deed is recorded within 15 calendar days of the sale.[4] But that provision does not dictate the result Martin suggests. The significance of having "perfected" title is that Martin was thereby empowered to obtain possession of the property through an unlawful detainer action against plaintiffs, if necessary. (Code Civ. Proc., § 1161a, subd. (b)(3).) (Martin was apparently enjoined from proceeding on such a complaint pending the resolution of this action.) Given that plaintiffs' claim to title of the property is properly litigated in an action to quiet title (see *Evans v. Superior Court* (1977) 67 Cal.App.3d 162, 171 [equitable claims to title unrelated to compliance with section 2924 could not be raised as defenses in unlawful detainer action but could be pursued through quiet title actions]), Martin's timely recordation of the trustee's deed did not preclude them from pursuing such an action. (See *La Jolla*, *supra*, 129 Cal.App.4th at pp. 715–716 [trustee's deed

---

avoid confusion, we refer to the quiet title cause of action as the "ninth," as did plaintiffs and the trial court.

[4] Section 2924h, subdivision (c) now provides that a purchaser's title is deemed "perfected" as of 8:00 a.m. on the day of the sale if the trustee's deed is recorded within 21 calendar days of the sale. That change is not relevant to our analysis.

could be invalidated, even if recorded, where foreclosure sale was invalid and purchaser thus obtained no interest in the property].)

As we have discussed, plaintiffs could amend their complaint to allege that the trustee's sale was invalid due to Wells Fargo's violation of section 2923.6 and that Martin is not a bona fide purchaser. For the same reasons, a complaint so amended would also state a cause of action to quiet title.

### D. CONCLUSION

Although the trial court properly sustained Martin's demurrer, for the reasons we have discussed it should have allowed plaintiffs leave to amend their fourth, eighth, and ninth causes of action. We reach that conclusion upon consideration of the second amended complaint and the circumstances as they existed at the time the trial court exercised its discretion. (See *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542.)

Since that time, plaintiffs note, the trial court has entered judgment in favor of the trustee on all causes of action against it. Those included the fourth cause of action for wrongful foreclosure but not the eighth and ninth causes of action, which were not pleaded against the trustee. Plaintiffs appealed from that judgment, but this court dismissed that appeal after they failed to file an opening brief. The trial court also sustained Wells Fargo's demurrer as to plaintiffs' fourth, eighth, and ninth causes of action. But it overruled the demurrer as to certain other causes of action, and plaintiffs represent that proceedings against Wells Fargo remain ongoing in the trial court. The record before us does not reveal the current status of that litigation.

This appeal concerns only the trial court's judgment dismissing plaintiff's causes of action against Martin. That judgment is final as to Martin and thus appealable by plaintiffs. (See *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880.) Other proceedings involving the lender and the trustee do not prevent us from reversing the judgment, although they may complicate plaintiffs' efforts to obtain the

16

relief they seek in the trial court. (See *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 668 [where lender and trustee were dismissed from action to set aside trustee's sale following demurrer, but borrower obtained default judgment against third-party purchaser, that judgment was subject to collateral attack].)[5]

### III.   DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to vacate the portion of its order sustaining Martin's demurrer without leave to amend. The trial court is further directed to enter a new order (1) sustaining Martin's demurrer to plaintiffs' first cause of action without leave to amend and (2) sustaining Martin's demurrer to plaintiffs' fourth, eighth, and ninth causes of action with leave to amend. Plaintiffs may amend their fourth, eighth, and ninth causes of action to the extent consistent with their theory that the nonjudicial foreclosure sale of their home violated Civil Code section 2923.6. Under Code of Civil Procedure section 472b, plaintiffs must file any amended complaint within 30 days after the clerk of this court mails notice of the issuance of the remittitur. Costs are awarded to plaintiffs by operation of California Rules of Court, rule 8.278, subdivision (a)(1).

---

[5] We also note Martin has not demurred on grounds of defect or misjoinder of parties (Code Civ. Proc., § 430.10, subd. (d)), and the parties have not briefed that issue nor included in the record certain potentially relevant information. As our consideration of the issue would be premature (see *Majd*, *supra*, 243 Cal.App.4th at p. 1309), we leave the issue for the trial court to address if and when that becomes necessary.

17

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

**H049509**
*Annotti et al. v. Ouita Martin, LLC*